BARBARA WOLFE (SHORT) GRANDELL vs. PHILIP CUTLER
SHORT.

Norfolk.    December 6, 7, 1944. — February 5, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Marriage and Divorce*, Custody of child.  *Minor.*  *Probate Court*, Discretionary control of evidence.  *Witness*, Cross-examination.

The mere fact that the father of minor children, libellee in divorce proceedings, in whose custody the Probate Court had placed the children, on a single occasion, without notice to the court or to the libellant, removed the children to a summer camp in another State for eight weeks in the summer, did not as a matter of law require the allowance of a petition by the libellant for a modification of the decree which would grant custody of the children to her.

On the evidence, at the hearing of a petition by a libellant in divorce proceedings, mother of daughters eight and seven years of age, that a decree, which had been entered without objection on her part and had awarded custody of the children to the libellee, be modified and that custody be given to her, a failure to find unfitness of the libellee or any conduct on his part such that the welfare of the children required that he be not allowed to retain custody, was not plainly wrong, and no error appeared in the dismissal of the petition.

Exclusion of certain testimony, offered in cross-examination of the respondent at the hearing of a petition respecting custody of minor children of divorced parents to show the domestic atmosphere to which the children were exposed while in the respondent's custody, was within the discretion of the trial judge and disclosed no error.

PETITION, filed in the Probate Court for the county of Norfolk on April 17, 1944.

The case was heard by *Reynolds*, J.

*W. R. Bigelow*, for the petitioner.

*C. W. O'Brien*, for the respondent.

WILKINS, J.   This is an appeal by the mother of Marcia Short and Deborah Short from a decree of the Probate Court, dated May 15, 1944, denying her petition for modification of a previous decree whereby their custody had been awarded to the respondent, who is their father.

The evidence is reported, but there is no report of material facts.  The judge's decision imports a finding of every

fact supported by evidence and essential to his conclusion, and such findings, where based on oral testimony, are not to be set aside unless plainly wrong. *Berry* v. *Kyes*, 304 Mass. 56, 57–58. *Buckingham* v. *Alden*, 315 Mass. 383, 385.

The petitioner obtained a divorce from the respondent by a decree of the Probate Court, dated December 9, 1938, whereby custody of the children was awarded to the petitioner. By decree of November 20, 1939, the earlier decree was modified by awarding custody to the respondent. The latter proceeding was apparently uncontested. At the time of the hearing in the present case Marcia and Deborah were respectively eight and seven years of age, and since October, 1943, had resided in Springfield with the respondent and his wife, Marion Smith Short, whom he married September 18, 1943. The children had resided in Springfield since June, 1938, for the first year and a half with the respondent's parents, and thereafter until October, 1943, with the respondent and his parents. The petitioner and the respondent, when husband and wife, resided principally in Weymouth and Quincy. They ceased living under the same roof in June, 1938, when the petitioner wrote the respondent's mother in Springfield: "Philip and I have decided, after a month's trial, that it is impossible for us to make a go of our marriage so we have agreed to separate. We both understand that you will be more than willing to take Marcia and Deborah. If you will let me know when you can come for them I will have them ready for you." Since that time the petitioner has continued to reside in Weymouth, and has seen the children not more than twice a year and always at Springfield, to which it was for several years a financial burden for her to go. The children did not discover that she was their mother until April, 1943. In September, 1939, she married her present husband and has the custody of a daughter, eleven years of age at the time of the hearing, by a marriage previous to that with the respondent. The petitioner and her husband are financially able to support the children, and there is nothing to indicate that the home would be other than

it should be. On the other hand, the judge could find that the children had a good home with the respondent and his wife, and that they were well taken care of. The judge could also find from the testimony, including that of the children, that they preferred to continue to live with the respondent and with his wife, whom they often referred to as "Mother." See *Dumain* v. *Gwynne*, 10 Allen, 270, 275.

The petitioner relies in some measure on the conduct of the respondent's mother, who was described in the petitioner's testimony as "very domineering." The petitioner charges her with dictating the conditions under which the petitioner might see the children, with preventing the petitioner from seeing them alone, and with telling them that their mother was dead. The petitioner testified that the respondent apparently "condoned" his mother's conduct. It is argued that the respondent left the children to the care of his mother, and thus subjected the children to "influences hostile to their mother by a person of very violent prejudices." The respondent's mother at the time of the hearing was not in favor with the respondent's wife, and apparently no longer visited at her house. The respondent's mother could have been found to have ceased to be a factor in the case.

In the summer of 1943 the respondent sent his daughters to spend eight weeks at a children's camp in Vermont, the junior department of which was in the charge of the respondent's wife whom he was then planning to marry. She did not inform the petitioner that the children were going to Vermont. The petitioner argues from this that the respondent did not notify the Probate Court or the petitioner. See G. L. (Ter. Ed.) c. 208, § 30. Assuming this to be true, a decree for the petitioner is not thereby required as matter of law. See *Hersey* v. *Hersey*, 271 Mass. 545, 549, 550.

At the time of the hearing the respondent had a draft status of 1–A. The respondent's wife had stated that if he should be drafted, she might take the children to Virginia or Vermont, but testified that she had said this without

knowing that the children could not be taken out of the Commonwealth, that there was no possibility of their going to either State, and that her present plan would be to remain in the same house in Springfield. The judge could accept this testimony of the respondent's wife.

The wisdom of changing the order for custody was one peculiarly within the province of the judge, who observed the witnesses, among whom were both parents. See *Oliver* v. *Oliver*, 151 Mass. 349, 350. He was not plainly wrong in failing to find the respondent "unfit" (see G. L. [Ter. Ed.] c. 201, § 5) or in not finding that there had been "misconduct" on his part (see G. L. [Ter. Ed.] c. 208, § 31). *Jenkins* v. *Jenkins*, 304 Mass. 248, 250. *Cassen* v. *Cassen*, 315 Mass. 35, 37.

The petitioner contends that the decree gives priority over the mother to the stepmother. The paramount issue in the present case is the welfare of the children. In our opinion the evidence does not support the contention of the petitioner that the conduct of the respondent has been such that their welfare requires that he not be allowed to retain their custody. G. L. (Ter. Ed.) c. 208, §§ 28, 31. See *Purinton* v. *Jamrock*, 195 Mass. 187, 200; *Hersey* v. *Hersey*, 271 Mass. 545, 555.

The oral statements of the judge made at the conclusion of the hearing were not findings of fact, and the petitioner's argument based thereon cannot be considered. *Rappel* v. *Italian Catholic Cemetery Association*, 259 Mass. 550, 553.

The respondent was asked on cross-examination, "There was a time when you changed the locks on the doors, wasn't there?" He answered, "Yes, sir," and was then asked, "When was that?" The judge inquired of the petitioner's counsel if he were trying to show that this was done to keep the petitioner out, and counsel answered in the negative, saying that he was attempting to show bad feeling between the respondent's wife and his mother after his remarriage. The question was excluded subject to the exception of the petitioner, who voluntarily made an offer of proof, which was unnecessary (*McGeorge* v. *Grand Realty*

*Trust, Inc.* 316 Mass. 373, 377) and irresponsive, to the effect that "that was done at the instigation of . . . [the respondent's wife] to keep his mother out." The petitioner now argues that the question was admissible to show "the domestic atmosphere to which the children were exposed in the respondent's custody." We think that there was no error, and that the cross-examination in this respect was within the discretion of the judge.

We take no cognizance of further proceedings that were said to have been entered in the Probate Court after the entry of the appeal now before us, which apparently are still pending in that court. *Owen* v. *Owen*, 264 Mass. 40, 41–42.

*Decree affirmed.*